CHARLES F. MATTLAGE, DEFENDANT IN ERROR, v. THE BOARD OF CHOSEN FREEHOLDERS OF HUDSON COUNTY AND THE BOARD OF CHOSEN FREEHOLDERS OF BERGEN COUNTY, PLAINTIFFS IN ERROR.

Argued June 22, 1899—Decided November 20, 1899.

1. The Bridge act of March 15th, 1860 (*Gen. Stat.*, p. 307), making the board of chosen freeholders of a county responsible for damage received by any person through the wrongful neglect of the board to erect, rebuild or repair a bridge, with the erection, rebuilding or repair of which the board is chargeable by law, applies to the case of a person whose vessel is damaged by running against the draw of a bridge spanning a navigable river.

2. If such a bridge stands between two counties, the boards of chosen freeholders of both counties may be held jointly liable.

3. Under the circumstances of the present case, in which it appeared that a draw over the Hackensack river could not be opened because the heat had expanded the rails laid by a trolley company upon it, and consequently the plaintiff's vessel ran against the bridge, the questions whether the defendants were guilty of wrongful neglect and whether the plaintiff was chargeable with contributory negligence were for the jury, and on these questions it was permissible to show how near to the bridge the bridge-tenders usually allowed vessels to be before the draw began to move.

On the error to the Supreme Court.

For the plaintiffs in error, *John Griffin.*

For the defendant in error, *Flavel McGee.*

The opinion of the court was delivered by

DIXON, J. The plaintiff sued to recover compensation for damage sustained by his vessel in running against the Paterson plank road bridge, which spans the Hackensack river between the counties of Hudson and Bergen.

At the trial in the Hudson Circuit the testimony tended to prove that, in the afternoon of April 25th, 1895, the plaintiff's schooner, heavily laden, was sailing up the river in a north-

easterly direction before a fresh southwest wind and a tide flowing three miles an hour; that until the vessel was about a mile from the bridge she was carrying a double-reefed mainsail, a foresail and a jib; that then the mate blew a horn as a signal for the opening of the draw, and the crew took in the foresail, lowered the mainsail to the third reef, dropped the peak and hauled in the boom, so as to be ready to pass through the bridge, which by that time was only five or six hundred feet distant; that when about six hundred yards from the bridge the mate had again blown the horn, and he and the captain, who was steering, had noticed the bridge-tenders at the draw apparently preparing to open it; that no intimation of trouble was given from the bridge until the schooner was about two hundred feet away, when a bridge-tender began waving his hat; that then the schooner was moving six miles an hour, and it was impossible to put her about or to cast anchor so as to avoid a collision, and the captain, deeming it the least harmful course, kept straight on, pushing the draw open before him, but carrying away both his masts; that it was usual for the bridge-tenders to delay the actual opening of the draw until vessels were within two hundred feet of it; that on this occasion the difficulty at the draw was that the rails across the bridge, laid by a trolley company under "the consent, permission and authority" of the defendants, about eighteen months before the accident, had become expanded by the heat and thus, on the end of the draw, were jammed against the stationary part of the bridge; that this difficulty had existed during the warm weather of the preceding year and had then been partially relieved by inserting two *slip rails*.

The legal basis of the plaintiff's suit is to be found in the Bridge act of March 15th, 1860 (*Gen. Stat., p.* 307), which gives a right of action to any person receiving injury or damage through the wrongful neglect of a board of chosen freeholders to erect, rebuild or repair any bridge, with the erection, rebuilding or repair of which such board is chargeable by law.

In *Ripley* v. *Chosen Freeholders of Essex and Hudson*, 11 *Vroom* 45, the Supreme Court held that this statute was applicable to a case where a vessel was damaged in attempting to pass through a bridge, the draw of which could not be promptly opened because of its being out of repair, and that, when the bridge lies between two counties, so that both are legally charged with the duty of repairing it, the boards of both counties may be jointly sued. This decision was expressly approved by the Court of Errors in *Jernee* v. *Monmouth*, 23 *Id.* 553, and is not now questioned.

The plaintiff has obtained a verdict and judgment.

The chief grounds on which the defendants rely for reversal of the judgment are that the testimony failed to present a case for the jury on the question of wrongful neglect by the defendants and presented an indisputable case against the plaintiff on the question of contributory negligence in the captain of the schooner, so that the trial judge ought to have directed a nonsuit or a verdict for the defendants.

We cannot assent to either of these propositions.

The rails laid by the trolley company under the sanction of the defendants were a part of the bridge, and for their proper condition the defendants were responsible to the general public as fully as they were for other parts of the structure. Those rails not being laid and maintained in such state as to permit the draw to be readily opened for the passage of vessels, the bridge was in that particular defective for want of proper construction or repair. This defect having been observed during several months before the accident, and an unsuccessful attempt having been made to remedy it, and there being no evidence that it was irremediable, the question whether the defendants, to whose charge it was committed by law, had exercised reasonable care and skill respecting it, was plainly for the jury.

The defence of contributory negligence rests on the following testimony of the captain :

"*Q.* How long does it take to open that draw, or did it in those days ?

"*A.* That draw—they have always supposed to open it pretty lively.

"*Q.* Could they open it in five minutes?

"*A.* Yes; I guess in three minutes.

"*Q.* Could they open it in less than three minutes?

"*A.* I don't know as they could.

"*Q.* Are you satisfied they could not open that bridge in less than three minutes?

"*A.* I don't think they could; it depends upon circumstances." ·

Deeming this to establish conclusively against the plaintiff that the draw must be in motion for at least two minutes before a vessel can pass through, the defendants' counsel argues from the admitted speed of the vessel, six miles an hour—*i. e.*, five hundred and twenty-eight feet a minute—that it should have been evident to the captain when he was still a thousand feet away that the draw would not be open in time, and he should then have gone about or cast anchor, as he could have safely done at any place more than three hundred feet from the bridge.

But we cannot regard this *guess* of the captain's as conclusive. It is inconsistent with his other testimony, that usually the draw began to move when his vessel was only two hundred feet, and sometimes when it was only one hundred and fifty feet, distant from the bridge, and yet he had always before sailed through unharmed. This statement can be reconciled with his guess only on the supposition that the speed of his vessel was usually less than one mile an hour, a highly improbable supposition with a river whose tide runs three miles an hour.

The evidence of contributory negligence was not so clear as to call for a decision by the judge instead of the jury.

The eighth request to charge, which is pressed upon our attention, was properly denied because it ignores the testimony just referred to, on which the jury might find that, when the captain was near enough to see that the draw was not likely to be opened, he was too near to prevent a collision.

The evidence, to the admission of which the defendants objected at the trial, concerning the usual distance of vessels from the bridge when the bridge-tenders began to move the draw, was lawful for the purpose of showing how quickly the draw might be opened and how soon the captain of an approaching vessel ought to apprehend danger.

We find no error in the record, and the judgment should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, LUDLOW, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH. 12.

*For reversal*—None.